79 A.3d 562

**COMMONWEALTH of Pennsylvania, Appellant**

**v.**

**Justin David HOLMES, Appellee.**

Supreme Court of Pennsylvania.

Submitted Oct. 26, 2010.

Resubmitted Aug. 13, 2013.

Decided Oct. 30, 2013.

Kathleen Granahan Kane, Esq., Kelley Lynn Nelson, Esq., Christopher Joseph Schimdt, Esq., Richard A. Sheetz, Esq., PA Office of Attorney General, for Commonwealth of Pennsylvania.

David Crowley, Esq., Deborah Lux, Esq., Centre County Public Defender's Office.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

*OPINION*

CASTILLE, Chief Justice.

In this appeal, we consider the reviewability of claims of ineffective assistance of counsel on post-verdict motions and direct appeal under *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003), *cert. denied*, 540 U.S. 1115, 124 S.Ct. 1053, 157 L.Ed.2d 906 (2004), and *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), including the question of whether ineffectiveness claims may be considered if accompanied by a waiver of review as of right under the Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq.* ("PCRA"). For the reasons that follow, we vacate the Superior Court's order and remand to the trial court for proceedings consistent with this Opinion.

By way of summary, we hold that *Grant's* general rule of deferral to PCRA review remains the pertinent law on the appropriate timing for review of claims of ineffective assistance of counsel; we disapprove of expansions of the exception to that rule recognized in *Bomar*; and we limit *Bomar*, a case litigated in the trial court before *Grant* was decided and at a time when new counsel entering a case upon post-verdict motions was required to raise ineffectiveness claims at the first opportunity, to its pre-*Grant* facts. We recognize two exceptions, however, both falling within the discretion of the trial judge. First, we appreciate that there may be extraordinary circumstances where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice; and we hold that trial courts retain their discretion to entertain such claims. *See infra* Part III(C)(1).

Second, with respect to other cases and claims, including cases such as *Bomar* and the matter *sub judice*, where the defendant seeks to litigate multiple or prolix claims of counsel

ineffectiveness, including non-record-based claims, on post-verdict motions-and direct appeal, we repose discretion in the trial courts to entertain such claims, but only if (1) there is good cause shown,[1] and (2) the unitary review so indulged is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA.[2] In other words, we adopt a paradigm whereby unitary review may be available in such cases only to the extent that it advances (and exhausts) PCRA review in time; unlike the so-called *Bomar* exception, unitary review would not be made available as an accelerated, extra round of collateral attack as of right. *See* Part III(C)(2). This exception follows from the suggestions of prior Court majorities respecting review of prolix claims, if accompanied by a waiver of PCRA review. *See Commonwealth v. Wright*, 599 Pa. 270, 961 A.2d 119, 148 n. 22 (2008); *Commonwealth v. Liston*, 602 Pa. 10, 977 A.2d 1089, 1095–1101 (2009) (Castille, C.J., concurring, joined by Saylor and Eakin, JJ.).

# I

On December 8, 2005, appellee was charged with two counts of criminal use of a communication facility,[3] as well as single counts of delivery of cocaine, possession with intent to deliver cocaine, and simple possession of cocaine.[4] Represented by

---

1. As will be explained in Part III(C)(2) *infra*, in short sentence cases the trial court's assessment of good cause should pay particular attention to the length of the sentence imposed and the effect the length of the sentence will have on the defendant's realistic prospect to be able to avail himself of collateral review under the PCRA.

2. Unitary review describes the defendant's ability to pursue both preserved direct review claims and collateral claims of trial counsel ineffectiveness on post-sentence motions and direct appeal, and could aptly describe both exceptions we recognize today. However, for purposes of this appeal, we intend the term only to describe the second exception, *i.e.*, that hybrid review which would encompass full-blown litigation of collateral claims (including non-record-based claims).

3. 18 Pa.C.S. § 7512(a).

4. 35 P.S. § 780–113(a)(30), (a)(16).

retained private counsel, appellee proceeded to a jury trial on November 7, 2006, and was found guilty of all charges except one of the counts of criminal use of a communication facility. The trial court sentenced appellee to three to six years of imprisonment on the delivery charge and a concurrent sentence of two to four years on the criminal use of a communication facility conviction, both with credit for time served. The other drug convictions were deemed to merge for sentencing purposes.

Appellee filed a *pro se* notice of appeal to the Superior Court, which he later withdrew. On May 2, 2007, appellee motioned for appointment of counsel in the trial court, which the trial court granted, appointing the Centre County Public Defender's Office. On August 23, 2007, appellee filed a counseled PCRA petition seeking reinstatement of his appeal rights due to trial counsel's failure to file a requested direct appeal. Appellee amended the petition on December 18, 2007, raising multiple substantive claims of ineffective assistance of trial counsel. On May 16, 2008, following an earlier evidentiary hearing, the PCRA court reinstated appellee's direct appeal rights *nunc pro tunc*, without addressing the substantive ineffectiveness claims.

Appellee filed a notice of appeal and a statement pursuant to Pa.R.A.P. 1925(b), identifying eleven issues of ineffectiveness of trial counsel. On September 22, 2008, the PCRA court issued its opinion pursuant to Rule 1925(a), briefly addressing the merits of those ineffectiveness claims.

In his Superior Court brief, appellee pursued only three of the eleven claims of ineffectiveness; he raised no preserved, direct review claims. The Superior Court panel determined that appellee's merits arguments were "misguided" because he should have argued that the PCRA court, in its opinion reinstating appellee's direct appeal rights *nunc pro tunc*, had erred by failing to consider the effect of appellee's amended PCRA petition raising trial counsel's ineffectiveness. The panel cited the Superior Court's then-recent *en banc* decision in *Commonwealth v. Liston*, 941 A.2d 1279 (Pa.Super.2008) (*en banc*). *Liston* had held that, where a PCRA petitioner

seeks reinstatement of direct appeal rights *nunc pro tunc* and also raises claims of trial counsel ineffectiveness, and the PCRA court grants reinstatement of direct appeal rights, the PCRA court must also grant the petitioner leave to file post-sentence motions *nunc pro tunc* to provide the PCRA and Superior Courts with a sufficient record to dispose of the ineffectiveness claims. *Id.* at 1280. Following *Liston*, the Superior Court panel here remanded to the PCRA court with instructions to permit appellee to file post-sentence motions *nunc pro tunc* in which he could raise his ineffectiveness claims.

In the meantime, the Commonwealth sought discretionary review of *Liston*, which this Court granted. *Commonwealth v. Liston*, 598 Pa. 638, 959 A.2d 1248 (2008) (*per curiam* order). The Commonwealth in this matter then filed a petition for allowance of appeal, arguing that this Court should hold the petition pending *Liston*. Alternatively, the Commonwealth argued that the Superior Court's remand was unnecessary under *Bomar*, even though appellee's claims were raised in a PCRA petition rather than in post-verdict motions, because the trial court had conducted an evidentiary hearing and had eventually addressed the merits of the ineffectiveness claims in its opinion. On August 17, 2009, three days after the Commonwealth filed its petition, we decided *Liston*. We affirmed Liston's sentence and vacated and disapproved of the Superior Court's holding that a reinstatement of appellate rights *nunc pro tunc* also requires granting the defendant the right to file post-sentence motions *nunc pro tunc*. *Commonwealth v. Liston*, 602 Pa. 10, 977 A.2d 1089.

By way of further background, the defendant in *Liston* filed a *pro se* PCRA petition seeking reinstatement of his appellate rights *nunc pro tunc*, alleging ineffectiveness of trial counsel for failing to file a requested direct appeal. The PCRA court appointed new counsel, who filed an amended petition raising substantive claims of ineffective assistance of trial counsel. The PCRA court determined that Liston's trial counsel was ineffective in failing to file the appeal and reinstated Liston's direct appeal rights; however, the court did not address the

substantive ineffectiveness claims. Liston then filed his direct appeal raising a single direct review issue involving the sufficiency of the evidence, as well as the ineffectiveness claims he had raised in his PCRA petition. The Superior Court *en banc* ruled only on the sufficiency claim and declined to consider the ineffectiveness claims, relying on *Grant's* holding that ineffectiveness claims should be deferred to PCRA review.

However, the *Liston* panel then went farther and fashioned an additional, broader exception to *Grant*, based in part on *Bomar*. This new exception required that, when direct appeal rights are reinstated *nunc pro tunc*, the trial court must also permit the defendant to file post-sentence motions *nunc pro tunc* to raise new claims of ineffective assistance of counsel for direct review. The court justified its new rule, in part, by suggesting that it would "preserve valuable judicial time and resources" by sparing the defendant the trouble of filing a PCRA petition after his direct appeal was litigated. 941 A.2d at 1284–85. The court then remanded to the trial court to permit Liston to file postsentence motions *nunc pro tunc*.

On the Commonwealth's appeal to this Court, we vacated the Superior Court decision in *Liston* to the extent that it remanded for filing post-sentence motions *nunc pro tunc*, and we instead affirmed the judgment of sentence. Madame Justice Greenspan, writing for the Court, emphasized *Grant's* teaching that ineffectiveness claims generally should be deferred until post-conviction review, and that only this Court may create exceptions to the *Grant* rule. *Liston*, 977 A.2d at 1093. We further explained that:

Clearly, the Superior Court's holding creates an exception to the *Grant* rule in that it permits a defendant to obtain what is essentially collateral review even before a direct appeal has been litigated. In *Grant* we expressed a preference that review of ineffectiveness claims be deferred until the post-conviction collateral review stage ... because we recognized that "time is necessary for a petitioner to discover and fully develop claims related to trial counsel ineffectiveness." 813 A.2d at 737–38. Thus we concluded that "[d]eferring review of trial counsel ineffectiveness claims

until the collateral review stage of the proceedings offers a petitioner the best avenue to effect his Sixth Amendment right to counsel." 813 A.2d at 738. While we created an exception to *Grant* in our decision in *Bomar*, we have explicitly reiterated the general rule in *Grant* and further directed that any exception to that general rule be accomplished only by this Court:

> Accordingly, we believe the best course of action is to reaffirm our decision in *Grant* and reiterate that, as a general rule, claims of ineffective assistance of counsel will not be entertained on direct appeal. *Moreover, we take this opportunity to disapprove of any decisions of the Superior Court that are to the contrary* ....

[*Commonwealth v.*] *O'Berg* [584 Pa. 11], 880 A.2d [597] 602 [ (2005) ] (emphasis added).

*Liston,* 977 A.2d at 1093–94.

The *Liston* Court went on to explain that the exception devised by the Superior Court "was capable of undermining the very purpose and policy underlying *Grant*." Focusing on the Superior Court's suggestion that its rule would conserve judicial resources, we noted that the prospect of such an effect was "doubtful" because a defendant favored by the *Liston* rule still retained the right to seek PCRA review as of right if his direct appeal failed. Furthermore, we expressed concern with the fact that, "the Superior Court's decision grants some defendants an additional automatic opportunity to attack their convictions based on claims of ineffective assistance of counsel, a recourse not available to all defendants. *See Commonwealth v. Rega,* 593 Pa. 659, 933 A.2d 997, 1030 (2007) (Castille, C.J., concurring) (in a concurring opinion, then-Justice Castille commented that it is unfair to afford an additional avenue of relief to certain defendants)." *Id.* at 1094.

This author, joined by Mr. Justice Saylor and Mr. Justice Eakin (thus representing a majority of the five Justices participating in *Liston* ), filed a concurring opinion which joined the majority with the exception of one point, not relevant here, concerning whether the Superior Court had improperly at-

tempted to promulgate a new rule of criminal procedure. The concurrence stated that the Court should "formally limit *Bomar* to its pre-*Grant,* unitary review facts," and direct the lower courts "not to indulge unitary, hybrid review in the post-verdict and direct review context, unless such review is accompanied by an express, knowing and voluntary waiver of PCRA review." The concurrence noted that this approach would allow acceleration of collateral review in some instances, "but would not, as would happen here under the Superior Court's rule, arbitrarily afford certain defendants both accelerated and multiple rounds of collateral review." *Liston,* 977 A.2d at 1096 (Castille, C.J., concurring). Mr. Justice Baer filed a separate concurring opinion expressing, *inter alia,* a counter-point to the view in this author's concurrence.

After our decision in *Liston,* this Court granted allocatur in this case, phrasing the issue for review as follows:

> Whether the claims of ineffective assistance of counsel which are the exclusive subject of this *nunc pro tunc* direct appeal: (1) are reviewable on direct appeal under *Commonwealth v. Bomar* [573 Pa. 426], 826 A.2d 831 (Pa.2003); (2) should instead be deferred to collateral review under the general rule in *Commonwealth v. Grant* [572 Pa. 48], 813 A.2d 726 (Pa.2002) that defendants should wait until the collateral review phase to raise claims of ineffective assistance of counsel; or (3) should instead be deemed reviewable on direct appeal only if accompanied by a specific waiver of the right to pursue a first PCRA petition as of right. *See Commonwealth v. Wright* [599 Pa. 270], 961 A.2d 119, 148 n. 22 (Pa.2008) ("Prolix collateral claims should not be reviewed on post-verdict motions unless the defendant waives his right to PCRA review...."); *see also Commonwealth v. Liston* [602 Pa. 10], 977 A.2d 1089, 1095–1101 (Pa.2009) (Castille, C.J., concurring, joined by Saylor, J., & Eakin, J.).

*Commonwealth v. Holmes* [606 Pa. 209], 996 A.2d 479 (Pa. 2010). This appeal presents pure questions of law; therefore, our standard of review is *de novo,* and our scope of review is plenary. *Liston,* 977 A.2d at 1092.

## II

The Commonwealth states that it will not address the Superior Court's reasoning below, since it is "clearly erroneous to the extent that it relied upon its decision in *Liston*, which has since been overturned." Brief of Appellant at 10. Addressing the *Bomar* exception to *Grant*, the Commonwealth argues that appellee's ineffectiveness claims should not be deemed reviewable on direct appeal under *Bomar* even if they had been accompanied by a specific waiver of his PCRA rights, but instead, the collateral claims should be deferred until PCRA review, as dictated by *Grant*.

The Commonwealth traces the manner in which ineffectiveness claims have been handled by the courts, beginning with *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977), which required the defendant, upon pain of waiver, to raise ineffectiveness claims at the first opportunity after new counsel enters an appearance. *Id.* at 695 n. 6 ("ineffectiveness of prior counsel must be raised as an issue at the earliest stage in the proceedings at which the counsel whose effectiveness is being challenged no longer represents the defendant"). In 2002, *Grant* altered this construct, explaining that waiver for purposes of the PCRA, *see* 42 Pa.C.S. § 9544(b), did not encompass claims of trial counsel ineffectiveness where new counsel entered the case on direct appeal, and mandating that ineffectiveness claims generally be deferred until post-conviction proceedings. The next year, this Court recognized a limited exception to the *Grant* deferral rule in *Bomar*, a direct capital appeal that was decided post-*Grant* but which involved a pre-*Grant* procedure in the lower court—*i.e.*, Bomar's newly-appointed counsel had filed comprehensive post-sentence motions raising ineffectiveness claims. The *Bomar* trial court held evidentiary hearings, heard from trial counsel, and then denied the ineffectiveness claims on the merits. The Commonwealth asserts that this Court determined that these circumstances presented an exception to the *Grant* deferral rule because there was an extensive record regarding the ineffectiveness claims.

The Commonwealth adds that this Court has continued to recognize and apply the *Bomar* exception in appropriate cases citing, as examples, *Commonwealth v. O'Berg, supra, Commonwealth v. Rega, supra,* and *Commonwealth v. Wright, supra.* The Commonwealth then notes that some Justices have expressed concerns with the continued application of a *Bomar*-style exception in cases litigated post-*Grant.* And, indeed, in a series of concurring opinions, this author and other Justices have expressed the view that *Bomar* was not devised as a prospective exception affecting all cases and inviting trial courts to permit unitary review on post-verdict motions, but rather, represented an instance where the Court accepted the pre-*Grant* unitary review record presented, and then decided that hybrid appeal. *See Liston,* 977 A.2d at 1097 (Castille, C.J., concurring, joined by Saylor and Eakin, JJ.); *Rega,* 933 A.2d at 1029 (Cappy, C.J., concurring); *Rega,* at 1029–33 (Castille, J., concurring, joined by Saylor, J.); *O'Berg,* 880 A.2d at 603 (Castille, J., concurring). *Accord Commonwealth v. Montalvo,* 604 Pa. 386, 986 A.2d 84, 111–12 (2009) (Castille, C.J., concurring). The Commonwealth notes that these expressions would limit *Bomar* to the narrow class of cases in the same pre-*Grant* procedural posture as *Bomar, i.e.,* ineffectiveness claims raised on post-verdict motions because new counsel entered the case and, at that time, was required to raise the claims pursuant to *Hubbard.*

The Commonwealth notes that the primary concern with an expansive application of the *Bomar* exception is that it affords select defendants "two bites at the collateral review apple," while other defendants are permitted only the single collateral review of right authorized by the PCRA. Brief of Appellant at 14 (quoting *Rega,* 933 A.2d at 1030 (Castille, J., concurring)). In addition, application of *Bomar* in post-*Grant* cases would inject arbitrariness as it essentially leaves the question of whether to award an additional and accelerated round of collateral review within the trial judge's discretion. Such a prospect also thwarts one of the main purposes of *Grant,* which was to eliminate the need for layering ineffectiveness claims to account for two prior levels of lawyering. The

Commonwealth further argues that this Court should expressly limit *Bomar* and hold that all ineffectiveness claims, even if raised and developed below and addressed by the trial court, must be deferred to PCRA review. According to the Commonwealth, the disparate treatment inherent in a contrary course indicates the need for uniform application of the *Grant* rule requiring that ineffectiveness claims be deferred to PCRA review.

In conjunction with this concern for uniformity, the Commonwealth also argues that this Court should not adopt the waiver procedure suggested by the *Liston* concurrence, which would allow for unitary, hybrid review encompassing ineffectiveness claims on post-verdict motions and direct appeal so long as the defendant waives his right to pursue PCRA relief. The Commonwealth suggests that such a procedure will not result in fewer PCRA petitions because a defendant can always file a timely second PCRA petition attacking prior counsel's effectiveness and the validity of his PCRA waiver, allegations which, in turn, would require the layering of ineffectiveness claims that *Grant* had sought to avoid. Thus, the Commonwealth concludes, a waiver procedure would not have the intended effect of efficiency and equalizing the opportunity for collateral review as of right.

In response, appellee argues that a *Bomar*-like exception should apply here because his ineffectiveness claims were presented to the trial court in his PCRA petition, even if they were not presented in post-verdict motions; a record, including testimony from trial counsel, was made before *nunc pro tunc* reinstatement of his direct appeal rights was granted; and the trial court eventually addressed the merits of the issues in its opinion. Simply stated, appellee's position is that, so long as the record is sufficient to review the ineffectiveness claims on his direct appeal, he should be deemed entitled to review of the claims. Appellee notes that the *Grant* Court left the door open to "the prospect of exceptions to the general rule of deferral of all ineffective assistance of counsel claims to collateral review." *See Grant*, 813 A.2d at 738 n. 14. Appellee further argues that the *Bomar* Court noted that the fact

that Bomar's ineffectiveness claims were properly raised and preserved in the trial court was "a circumstance not present in, or addressed by *Grant.*" Appellee cites the *Bomar* Court's observation that when trial counsel testified at an evidentiary hearing, and the trial court addressed the merits of the ineffectiveness claims, the concerns that had led to the *Grant* rule "are simply not present in this context." *Bomar*, 826 A.2d at 853.

Appellee argues that, instead of applying *Bomar* and the Superior Court's prior decisions applying *Bomar*,[5] which should have led the Superior Court to address his ineffectiveness claims, the panel here delayed decision on the merits and "foist[ed] upon him a remedy he did not seek and from which he cannot benefit." Appellee says that he supported the Commonwealth's allocatur petition in the hope that this Court would remand to the Superior Court to rule on the merits of his ineffectiveness claims. Brief for Appellee at 7.

Appellee further notes that, to the extent this Court's concerns in this area are with purposeful delays by defendants, delay does not serve his interests. He was brought to this point not by a calculated decision, but rather, by trial counsel's failure to preserve issues and file a direct appeal and his derivative failure to apprise appellee that, because no viable issues had been preserved for direct appeal, his proper recourse was to file a PCRA petition alleging ineffective assistance of counsel at trial.

Appellee also takes issue with the suggestion in the concurrence in *Montalvo* that *Bomar* should be limited to "*Hubbard*-era cases and ... that there is no '*Bomar* exception' to *Grant.*" *See Montalvo*, 986 A.2d at 112 (Castille, C.J., concurring). Appellee argues that there is nothing in *Bomar* suggesting that it was not a broad exception to *Grant* or that it applied only to *Hubbard*-era cases. Instead, appellee claims,

5. Appellee cites the Superior Court's decisions in *Commonwealth v. Rossetti*, 863 A.2d 1185 (Pa.Super.2004), *Commonwealth v. Simmons*, 846 A.2d 142 (Pa.Super.2004), *Commonwealth v. Blick*, 840 A.2d 1025 (Pa.Super.2004), and *Commonwealth v. Watson*, 835 A.2d 786 (Pa.Super.2003), all of which applied *Bomar* to situations where the trial court permitted hybrid review.

*Bomar* makes clear that *Grant* anticipated exceptions and that a *Bomar*-like exception was accepted in other jurisdictions. Appellee contends that *Bomar* should be viewed as a viable mechanism whereby appellate courts can resolve ineffectiveness claims on direct appeal.

Finally, appellee contends that, while capital defendants may benefit from the delay occasioned by litigating a hybrid appeal under a *Bomar* type of exception, delay is no ally of the typical defendant, such as himself, serving a term of years. Appellee also argues that the concern that the *Bomar* procedure affords select defendants an additional opportunity for collateral review is misplaced because any defendant who files a serial PCRA petition may be permitted a second review as well. Appellee concludes that the most expeditious course is where a trial court addresses a defendant's ineffectiveness claims and the appellate court rules on the merits of all claims, direct and collateral.

## III

### A

Preliminarily, we note that this case is not like *Bomar*, which was a capital case litigated in the trial court, before *Grant*, under the *Hubbard* rule. New counsel, who entered *Bomar* after the verdict, was both required and authorized to raise ineffectiveness claims on post-verdict motions at that time and did so, a full hearing was held where counsel testified, and the trial court ruled upon all claims. The trial court in *Bomar*, in short, afforded the defendant the unitary review contemplated by the Capital Unitary Review Act ("CURA"), 42 Pa.C.S. §§ 9570–79 (suspended; *see In re Suspension of Capital Unitary Review Act*, 554 Pa. 625, 722 A.2d 676 (1999) (explaining suspension)) and required by *Hubbard* in instances where new counsel entered a case at the post-verdict stage.[6] This author, who wrote the Court's opinion in *Bomar*, has described the dynamic in *Bomar* as follows:

6. In CURA, the General Assembly implemented a bifurcated, but simultaneous, post-trial review procedure at the trial court level for both

The post-trial litigation in *Bomar* commenced in 1999, three years before this Court overruled *Hubbard* [in *Grant*]. Notwithstanding that this Court had struck down the procedure-based unitary review paradigm for capital cases envisioned by the General Assembly in [CURA], ... the defendant in *Bomar* essentially proceeded, in light of the trial judge's discretionary post-verdict decisions, under a unitary review construct. This was not an unusual circumstance in capital (and some non-capital) cases arising during the *Hubbard* regime, since ineffectiveness claims were required to be raised immediately by new counsel, under pain of waiver.

*O'Berg*, 880 A.2d at 603 (Castille, J., concurring). Ultimately, in *Bomar*, we determined that the concerns informing *Grant* did not require deferral of the ineffectiveness claims on that record:

This Court's holding in *Grant* was grounded upon concerns which affected both the ability of the defendant to develop his claims and the reviewing court's ability to consider the claims. Thus we noted that, when appellate courts reviewed a claim of ineffective assistance of counsel raised for the first time on appeal under *Hubbard*, there was rarely a trial court opinion addressing the issue, which poses a "substantial impediment to meaningful and effective appellate review." 813 A.2d at 733–34 (quoting *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306, 308 (1998)). In addition, we expressed concern that review under *Hubbard* frequently obliged the appellate courts to consider matters not of record, a function that appellate courts normally do not perform.... Finally, we noted the difficult task that faced appellate counsel under *Hubbard* in attempting to uncover and develop extra-record claims of counsel ineffec-

post-sentence motions and collateral claims in capital cases, a procedure that would lead to a single unified appeal in this Court. This Court suspended CURA based upon a concern that it did not create a new substantive right or eliminate an existing substantive right, but merely provided a procedure for courts to administer capital cases. The prescribed procedure conflicted with then-existing court rules, and therefore, was deemed to violate Article V, Section 10 of the Pennsylvania Constitution. *In re Suspension of CURA*, 722 A.2d at 677.

tiveness in the truncated time frame available on direct appeal review.... 813 A.2d at 734–36.

\* \* \*

[Here,] there is [ ] a record devoted to the ineffectiveness claims. Indeed, trial counsel testified at the hearings on appellant's post-sentence motions concerning their versions of events at trial, their trial strategy, and their reasons for the actions or inactions that present counsel alleges to be improper.... In light of this ample record, there is no need to rely upon extra-record sources, such as averments in appellate briefs or affidavits, to resolve appellant's ineffectiveness claims....

*Bomar*, 826 A.2d at 853–54. Given this distinction in posture between *Grant* and *Bomar*, we crafted "an exception to the general rule of deferral in *Grant* " and proceeded to decide the hybrid appeal. *Id.* at 855. The *Bomar* Court did not note or discuss the fact that the unitary review afforded Bomar amounted to an extra round of collateral attack.[7]

In contrast, in the case *sub judice*, appellee's ineffectiveness claims were raised after *Grant* overruled *Hubbard;* they were not raised post-verdict, but in a PCRA petition following a failure to timely appeal; and appellee sought hybrid relief: both reinstatement of his direct appeal rights and review and relief premised upon his substantive, collateral ineffectiveness claims. Since the PCRA petition was filed post-*Grant*, once

7. Notably, had CURA not been suspended and Bomar proceeded under that statute, he would not have been able to pursue a PCRA petition as of-right following the failure of his unitary direct appeal. Under Section 9578 of CURA, "subsequent petitions" in capital cases could be entertained only if they fell within one of three exceptions (government interference; new facts; new constitutional right of retroactive effect) and were filed within sixty days of the date the new claim could have been presented. In short, PCRA petitions in CURA cases were subject to the same time-bar restrictions that governed non-capital PCRA petitions not filed within one year of the judgment becoming final. *See* 42 Pa.C.S. § 9545(b). Because CURA was suspended before Bomar's appeal, there was nothing to prevent him from filing a PCRA petition within one year of our affirming his judgment of sentence and receiving full-blown PCRA review, without being subject to the time-bar restrictions (albeit, Bomar would have faced other procedural hurdles and would have been obliged to layer any claims of counsel ineffectiveness).

appellee secured reinstatement of his direct appeal, he had no obligation or right to pursue, and the court had no obligation to indulge, claims of ineffective assistance of counsel and unitary review. Nor did the trial court allow unitary review as a matter of its discretion. Rather, a unitary review record was made here because, under pre-*Grant* Superior Court authority governing PCRA cases where *nunc pro tunc* reinstatement of direct appeal rights is awarded, the PCRA court was required to develop a record on the ineffectiveness claims, even if could not award relief on them. *See Commonwealth v. Miranda*, 296 Pa.Super. 441, 442 A.2d 1133 (1982) (*en banc*); *see also Liston*, 977 A.2d at 1098 (Castille, C.J., concurring) (discussing *Miranda*).

When the Court accepted the unitary review, direct appeal record in *Bomar*, a record which came about because of circumstances that no longer exist (the *Hubbard* rule), we neither explicitly nor implicitly suggested that trial courts should take measures that would allow certain defendants to recreate the *Hubbard*-era unitary review that occurred in *Bomar* and thereby award those defendants an additional, anticipatory round of collateral attack. *See O'Berg*, 880 A.2d at 603, 605 (Castille, J.) ("In *Bomar*, we engaged in direct appeal review of the defendant's ineffectiveness claims due to the very unique circumstances of that case; we did not purport to approve such a review paradigm prospectively, as a post-*Grant* matter. Rather, the Court merely took the *Hubbard*-era record as we found it in *Bomar*, and proceeded to determine if direct review, or a pointless deferral to PCRA review, of the collateral claims was appropriate."). Indeed, *Bomar* arose on this Court's non-discretionary capital appeal docket; appeal was not by allowance, to consider whether to adopt or accept a procedure, in all cases, which would allow for unitary review and an advance additional round of collateral attack. And, as additional cases appeared on our docket where the trial courts had permitted such hybrid review, the difficulties inherent in this consequence of *Bomar* became more apparent. Those difficulties, outlined in the concurring opinions in *O'Berg*, *Rega* and *Liston*, were never discussed by

the *Bomar* Court. Thus, it is not a sufficient answer to the review paradigm question we consider today to say that *Grant* recognized that there may be exceptions to its rule of deferral, and that *Bomar* represents just such an exception, which may be expanded. Rather, the answer must come to terms with the issues implicated by the expansion that this Court's experience, since *Grant* and *Bomar*, has revealed.

## B

The first opinion to question the propriety of a continuing and expansive application of *Bomar*-style review was this author's concurrence in *O'Berg*, a case where this Court rejected a "short sentence exception" to *Grant's* general rule requiring deferral of ineffectiveness claims to PCRA review. The concurrence noted that ineffectiveness claims are cognizable under the PCRA; *Grant* recognized that the PCRA is the appropriate repository for such claims; and the Court was not obliged to permit defendants to raise such collateral claims upon post-trial motions. 880 A.2d at 604–05 (Castille, J., concurring). At the same time, the concurrence recognized that there was nothing in existing post-verdict practice to prevent trial courts from permitting unitary review, a circumstance reflecting that the existing rules were drafted with *Hubbard* in mind. *Id.* at 603. The concurrence then noted considerations which should attend any determination to allow post-verdict unitary review in the wake of *Grant*, with the primary focus being upon the propriety of affording select defendants an extra round of collateral review:

> [T]he jurisprudential underpinnings of *Grant*, the practical effect of the decision, and the requirements of the PCRA necessarily call for a careful reconsideration of post-trial practice.... [A]ny consideration of whether and when claims of ineffectiveness may appropriately be pursued upon post-trial motions must account for the proper role played by the PCRA, as well as the consequence that should follow upon a determination that a defendant will be permitted to advance his collateral claims and litigate them in some "unitary" post-trial proceeding and on direct appeal. For

instance, it seems logical that, in a case where the defendant is serving a lengthy sentence, if the trial court is essentially asked to permit a defendant to compress collateral/PCRA review into his post-trial motions and direct appeal, the cost of doing so should be an explicit waiver of the right to pursue a later petition as of right under the PCRA. The post-verdict process should not be allowed to become a vehicle by which a defendant secures a second round of collateral attack as of right, raising new claims of ineffective assistance, where the PCRA explicitly envisions a single collateral challenge, in the absence of the extraordinary circumstances governing serial petitions as set forth in 42 Pa.C.S. § 9545(b).

*Id.* at 605–06 (footnotes omitted).

Two years after *O'Berg*, in *Rega*, the Court reviewed a capital defendant's ineffectiveness claims on direct appeal, citing *Bomar*. Three of the six participating Justices, however, writing from a concurring posture, voiced concerns over vesting discretion in the trial courts to permit defendants to build a post-sentence record on ineffectiveness claims, thus bringing the case within the supposed unitary review exception represented by *Bomar*. This author's concurrence, joined by Justice Saylor, noted that "there is no statutory authorization for the redundant, of-right collateral attacks that may result from hybrid direct appeal review." *Rega*, 933 A.2d at 1030 (Castille, J., concurring, joined by Saylor, J.). The concurrence then summarized the concerns in the *O'Berg* concurrence, and noted that: "Further reflection and experience, including in this case, merely corroborates and strengthens [the] view that prolix ineffectiveness claims should not be entertained as of right on post-verdict or post-sentencing motions—unless, perhaps, the defendant expressly enters a record waiver of his of-right, first PCRA petition. Allowing pre-PCRA hybrid review raises questions of avoidable delay, abuse, arbitrariness, and avoidable complication." *Id.* at 1032. On the specific questions of arbitrariness and avoidable complications, the concurrence explained that:

The question of arbitrariness arises because there are no existing standards or guidelines governing when a trial judge should permit litigation of ineffectiveness claims, or other collateral claims, on postverdict review or should defer [the claims] to review at the collateral stage. Even those judges who entertain such claims may fail to hold an evidentiary hearing, thereby impeding review and failing to satisfy *Bomar*. Other judges may allow for review of select collateral claims, but not others. It is impossible to imagine a workable discretionary rule which allows some defendants a full, pre-PCRA collateral attack in the direct appeal context, and confines others to preserved claims. Given the existence of the PCRA as the presumptive repository for collateral claims, the general rule should be that the defendant **cannot** expand post-verdict motions and direct appeal to encompass collateral claims (at least, absent an agreement to waive his PCRA rights). There may be certain fundamental, albeit collateral complaints (such as a relevant new and retroactive rule of constitutional law) that require immediate vindication. But, post-verdict motions should not become an accepted repository for laundry lists of collateral-appropriate complaints, with concomitant delay, such as occurred here—all in advance of a second round of statutorily-authorized collateral attack via the PCRA as of right.

The question of avoidable complication is an inevitable byproduct of entertaining ineffectiveness claims in advance of PCRA review. In a case such as this one and *Bomar*, when the defendant finally proceeds to PCRA review, he will have to couch his claims in terms of layered counsel ineffectiveness, *i.e.*, claiming that post-verdict/direct appeal counsel was ineffective for failing to raise different and additional claims of ineffective assistance of trial counsel. The question of how properly to approach such "layered" ineffectiveness claims caused such difficulties that this Court found it necessary to devise an appropriate protocol in *Commonwealth v. McGill*, 574 Pa. 574, 832 A.2d 1014 (2003). Nor has this Court fully come to terms with the standard for reviewing claims sounding in the ineffective-

ness of appellate and/or collateral counsel. Such complications disappear, or at least are severely minimized, if we devise and enforce a rational scheme consisting of a single direct review of preserved claims, followed by one collateral attack as of right.

*Id.* at 1032–33.

The concurrence suggested that unitary review on post-verdict motions could be appropriate, and would not be inconsistent with the suspension of CURA, but only if accompanied by an explicit waiver of the defendant's entitlement to PCRA review, and that such a procedure could be adopted by the Court in its rule-making function:

I have no objection to a form of unitary review taking place on postverdict motions and direct appeal. Some defendants seek not delay, but immediate vindication of a clear claim. But any such unitary review should be a substitute for, and not an advance supplement to, PCRA review. A single and binding, unitary review procedure is certainly what the General Assembly envisioned for capital cases when it enacted CURA in 1995. This Court suspended that sweeping legislation because it invaded our exclusive procedural rule-making authority under the Pennsylvania Constitution. But that action, premised upon existing conflict between the statute and the Criminal Rules, does not act as a bar to this Court considering the advisability of altering our Criminal Rules to allow for unitary review and, of course, that consideration can look to the intent, purpose, and wisdom of the CURA model. We have also seen modifications in the review of direct capital appeals and in PCRA review generally, including *Grant* (which applies to all criminal cases) and the elimination of the discretionary relaxed waiver doctrine (exclusive to capital cases). Also, in the time since we suspended CURA, this Court has seen firsthand the seemingly interminable delay that still exists in capital review in Pennsylvania, notwithstanding our attempts to streamline matters. It is time for the Court to take up the mantle and address, through our rule-making

authority, the advisability of adopting a procedure by which unitary review may be achieved in an appropriate case.....

Pending the result of [a formal rule change], I would take this opportunity to disapprove of trial courts entertaining prolix collateral claims on post-verdict motions, absent a concomitant waiver of PCRA review. . . .

*Id.* at 1033.

Then–Chief Justice Cappy, the author of both *Grant* and *O'Berg*, filed a separate concurrence in *Rega*, in which he expressed agreement with the concerns of this author's concurrence that the Court " 'should examine more squarely the procedural question of whether and when criminal defendants . . . should be afforded the postverdict and direct appeal unitary review which occurred in *Bomar.*' " *Rega*, 933 A.2d at 1029 (quoting 933 A.2d at 1030 (Castille, J., concurring, joined by Saylor, J.)). Chief Justice Cappy went on to express his "fear [ ] that continued employment of the *'Bomar* exception'* will eventually swallow the rule we announced in *Grant* governing the presentation of ineffectiveness claims." *Id.*

■ Significantly, in *Commonwealth v. Wright*, 599 Pa. 270, 961 A.2d 119 (2008), Mr. Justice Eakin, speaking for a three-Justice majority of that four-Justice Court,[8] added another voice embracing the concerns of the concurring Justices in *Rega*. Justice Eakin's Opinion, which was joined by this author and Justice Saylor on this point, noted that: "Prolix collateral claims should not be reviewed on post-verdict motions unless the defendant waives his right to PCRA review, because the PCRA does not afford the right to two collateral attacks." *Id.* at 148 n. 22, (citing *Rega*, 933 A.2d at 1032–33 (Castille, J., concurring, joined by Saylor, J.) and *Rega*, 933 A.2d at 1029 (Cappy, C.J., concurring)).

The same three Justices, representing a majority of the five-Justice Court in *Liston*, noted in concurrence that, consistently with this Court's signal in *Wright*, it "would formally

8. A decision of this Court has binding effect if a majority of the participating Justices joined the opinion. *Commonwealth v. Mason*, 456 Pa. 602, 322 A.2d 357, 358 (1974).

limit *Bomar* to its pre-*Grant*, unitary review facts, and ... would direct trial judges and the Superior Court not to create or indulge unitary, hybrid review in the postverdict and direct appeal context, unless such review is accompanied by an express, knowing and voluntary waiver of PCRA review." The concurrence added that it would make clear that there is no "*Bomar* exception" to *Grant*. The concurrence explained that this approach "would allow for acceleration of collateral review in some instances, but would not, as would happen under the Superior Court rule, arbitrarily afford certain defendants both accelerated and multiple rounds of collateral review." 977 A.2d at 1096, 1100 (Castille, C.J., concurring, joined by Saylor and Eakin, JJ.).

Consistently with the expressions of the Court majorities in *Wright* and *Liston*, the Superior Court recently held that an appellate court cannot entertain ineffectiveness claims on direct appeal absent the defendant's waiver of his PCRA rights, thus rejecting the appellant's claim that the collateral issues were properly before the court pursuant to *Bomar*. *Commonwealth v. Barnett*, 25 A.3d 371 (Pa.Super.2011) (*en banc*). The *en banc* panel held that the ineffectiveness claims should be deferred to collateral review, citing the footnote in *Wright* and the three-Justice concurrence in *Liston*. The panel reasoned as follows:

> [T]his Court cannot engage in review of ineffective assistance of counsel claims on direct appeal absent an "express, knowing and voluntary waiver of PCRA review." *Liston*, 602 Pa. at 22, 977 A.2d at 1096 (Castille, C.J., concurring). With the proviso that a defendant may waive further PCRA review in the trial court, absent further instruction from our Supreme Court, this Court, pursuant to *Wright* and *Liston*, will no longer consider ineffective assistance of counsel claims on direct appeal.

*Id.* at 377.

Strictly speaking, the issue of whether and when claims of ineffective assistance of counsel should be entertained on postverdict motions and direct appeal has already been addressed and answered by a Court majority in *Wright* and *Liston*. On

the other hand, the cases generating those expressions did not enforce such a holding, and review was granted in this case specifically to determine the issue. The issue having been fully briefed, we are convinced that *Wright* and the *Liston* concurrence were correct in their criticisms of the expansion of the *Bomar* exception, for the reasons summarized above in our discussions of *O'Berg, Rega, Wright* and *Liston.* Under the *"Bomar* exception" as it has played out, some, but relatively few, defendants (including Bomar) have been afforded an additional, anticipatory collateral attack upon their judgments, embracing prolix claims of trial counsel ineffectiveness, often including non-record-based claims, and all claims which are the proper subject of PCRA review. In cases litigated post-*Grant,* only those defendants who hire or otherwise secure new counsel during post-verdict proceedings may even attempt to seek unitary review, and even within that small class, review will only be available if the trial court agrees to allow a hybrid attack upon the judgment. Moreover, as *Wright* and the *Liston* concurrence noted, there is no limiting principle to govern and identify which cases should be permitted to proceed in unitary review fashion. It would be one thing if trial courts permitted the practice only to capture exceptional claims, *i.e.,* cases involving record-based ineffectiveness claims of alleged obvious merit. But, experience has shown that the exception, even in the post-*Grant* cases, has been invoked to permit litigation of numerous and relatively common claims of ineffectiveness of counsel which the trial court, and the appellate court, later rejected. *See, e.g., Wright,* 961 A.2d at 148–57 (numerous claims, including non-record-based claims); *Rega,* 933 A.2d at 1018 (four claims); *Commonwealth v. Chmiel,* 585 Pa. 547, 889 A.2d 501, 540 (2005) (six claims). In practice, the *Bomar* exception has operated as an extra round of collateral attack for certain defendants, unauthorized by the General Assembly, and subject to no review rationale beyond the discretion of the trial court.

This state of affairs cannot continue because of its inherently uneven application, the complication it poses for later PCRA review, and the obvious tension between that

practice and the intended role of the PCRA in providing a single, full collateral proceeding as of right to all defendants eligible to seek collateral relief. Accordingly, we reaffirm *Grant* and hold that, absent the circumstances we address below, claims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal.[9]

## C

The next question is whether there are any circumstances where post-verdict review encompassing ineffectiveness claims should be permitted. The Court majorities represented in *Wright* and the *Liston* concurrence, and the Superior Court's *en banc* decision in *Barnett*, opined that full-blown, hybrid review encompassing collateral claims can be appropriate, if accompanied by an express waiver of the defendant's PCRA rights. We will take up the propriety of that broad exception in Part (C)(2) *infra.* Preliminarily, however, we note that this question of full-blown review of prolix claims of ineffectiveness is subsumed within a more fundamental question, suggested by *Grant,* concerning what extraordinary circumstances may warrant consideration of ineffectiveness claims on post-verdict motions and direct appeal. It is important to recognize the distinction between individual claims of ineffective assistance alleged to be of such merit and importance as to warrant immediate review, and instances where the defendant seeks review of a range of ineffectiveness claims and/or of non-record-based claims—the circumstance represented in the cases which have permitted unitary review under the *Bomar* exception.

9. It should be emphasized that although criminal defendants have a right to direct appeal, they are not obliged to pursue such a course, but may instead proceed immediately under the PCRA. If the defendant (as appellee here) believes that his only viable claims are collateral ones, he need not await the failure of a direct appeal to pursue his claims under the PCRA.

### 1. Cases Posing Individual Claims Alleged to Warrant Exceptional Treatment

■ With respect to individual claims of ineffectiveness alleged to warrant exceptional treatment, we note that, in the decision where the Court prospectively abrogated the direct capital appeal relaxed waiver doctrine, we recognized that there may be claims of "such primary constitutional magnitude" that we would reach them on appeal, even if the claim was defaulted at trial, and notwithstanding the abrogation of relaxed waiver. *See Commonwealth v. Freeman,* 573 Pa. 532, 827 A.2d 385, 402 (2003). We believe that a similar flexibility should be recognized with respect to certain ineffectiveness claims that emerge at the post-verdict level. In short, there may be an extraordinary case where the trial court, in the exercise of its discretion, determines that a claim (or claims) of ineffectiveness is both meritorious and apparent from the record so that immediate consideration and relief is warranted. The administration of criminal justice is better served by allowing trial judges to retain the discretion to consider and vindicate such distinct claims of ineffectiveness, and we hereby approve such a limited exception to *Grant.*[10]

### 2. Cases Where Review is Sought of Prolix Claims

■ As noted, the sort of review represented by the cases construing *Bomar* as a broad exception to the *Grant* rule has not involved discrete claims of ineffectiveness reached because they were of obvious, record-based merit. To the contrary, the cases have tended to involve advance litigation of multiple and fairly common ineffectiveness claims, with the review differing from the comprehensive review available under the PCRA only in its timing, and the trial court allowing review of the claims for reasons other than to provide immediate relief on a claim of apparent merit. This circumstance was true of

10. To be clear, by recognizing the possibility of this exception, we do not suggest or authorize trial judges to appoint new counsel post-verdict to search for ineffectiveness claims. Ineffectiveness claims remain, as before, presumptively reserved for collateral attack, and we are speaking only of the authority of the trial judge when actually presented with individual claims alleged to warrant immediate review.

*Bomar* itself; it is true of the later cases in which this Court employed the *Bomar* exception; and it is this circumstance that was the subject of the concurring expressions in *O'Berg, Rega,* and *Liston,* and the majority opinion in *Wright.* Indeed, the concerns in *Wright* and *Rega* were specifically framed in terms of cases where "prolix" claims of ineffectiveness were raised. As detailed above, Court majorities have stated that this sort of unitary review, if permitted at all, should only proceed where accompanied by a knowing, voluntary, and express waiver of PCRA review.

As also explained above, litigation of ineffectiveness claims is presumptively for collateral attack. On the other hand, there are salutary reasons why there should not be an absolute impediment to the trial court, in its discretion, and for good cause shown, permitting post-verdict review of multiple, and indeed comprehensive, ineffectiveness claims if such review is accompanied by a waiver of PCRA rights appropriately tailored (a point addressed separately below). Permitting broad and unitary review where there is a waiver of PCRA rights does not raise the prospect of arbitrarily affording some defendants two rounds of collateral review as of right, while denying that option to other defendants; such a rule merely advances PCRA review. Advanced PCRA review is a procedural benefit, to be sure; but there may well be cases warranting such a course.

Indeed, unitary review in an appropriate case may afford a benefit for both the defense and the Commonwealth. The prospect of unitary review allows for more timely litigation of strong collateral claims without having to forego direct review claims. Unitary review also offers the prospect of the defendant locating witnesses and developing collateral claims when the relevant events are fresher in the memories of necessary witnesses. And, perhaps most importantly, unitary review offers defendants who receive shorter prison sentences or probationary sentences the prospect of litigating their constitutional claims sounding in trial counsel ineffectiveness; for many of these defendants, post-appeal PCRA review may prove unavailable. *See* 42 Pa.C.S. § 9543(a)(1)(i) (to be eligi-

ble for relief,` PCRA petitioner must be "currently serving a sentence of imprisonment, probation or parole."). Indeed, given the U.S. Supreme Court's recent decisional law emphasizing the constitutional primacy of claims involving the ineffectiveness of trial counsel, *see, e.g., Martinez v. Ryan,* 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012) (discussed in Part IV, *infra*) and *Trevino v. Thaler,* 569 U.S. ——, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013) (extending *Martinez*), the option of unitary review in short sentence cases is of particular value.

█ Mr. Justice Saylor's Concurring Opinion makes a strong case for finding that defendants serving sentences so short as to be unlikely to avail themselves of PCRA review should be entitled to post-verdict consideration of collateral claims of constitutional magnitude as of right. Mr. Justice Baer makes the same basic point in his Concurring Opinion. We recognize that it is difficult to postulate, at the post-verdict stage, which sentences are sufficiently lengthy that PCRA review likely will not be available should direct review fail.[11] Trial courts should err on the side of favoring the vindication of constitutional rights otherwise susceptible to forfeiture. We trust that trial courts, in short sentence cases where a request is made to litigate collateral claims in the post-verdict scenario, will recognize these practical concerns and liberally allow for unitary review.

Unitary review in appropriate cases may also offer a benefit to the Commonwealth. A conviction that survives unitary review reaches a point of finality sooner; and, in all cases subject to unitary review, the Commonwealth will know sooner whether a case must be retried. Moreover, because unitary review will allow for litigation of ineffectiveness claims closer to the time of trial, the Commonwealth should be better positioned to respond to those claims and should be better positioned to conduct retrials in those cases where that form of relief is granted; there is less time for memories to fade, for witnesses to disappear, *etc.*

11. There is no requirement that the defendant be currently subject to imprisonment, probation or parole in order to pursue a direct appeal.

Unitary review may also confer tangential benefits. Unitary review reduces the instances where a new judge, unfamiliar with the trial, passes upon the ineffectiveness claims. And, unitary review would occur closer in time for trial counsel as well, when counsel should have a better recollection of the reasons for the actions that form the basis for ineffectiveness claims.

To be clear, to ensure that the unitary review described here would not offer a benefit (beyond acceleration) not available to defendants who do not receive such review, the accompanying PCRA waiver must embrace more than exhaustion of the defendant's first PCRA petition, but instead must make clear that **any** further collateral attack is subject to the time-bar restrictions of Section 9545(b) (*i.e.*, petition must be filed within sixty days of date new claim could have been presented and must fall within one of three exceptions: government interference; new facts; new constitutional right of retroactive effect). The PCRA is commonly understood as contemplating a single petition as of-right, filed within one year of the date the judgment becomes final, with serial petitions subject to Section 9545(b). In fact, however, the restriction to three exceptional claims raised within sixty days of accrual only applies to petitions filed more than a year after the judgment becomes final. As a practical matter, few if any initial PCRA petitions proceed to final judgment (including appeal) within a year of the sentence, and thus all serial petitions will likely encounter the Section 9545(b) restrictions.

Permitting unitary review on direct appeal, however, offers the prospect that, if relief is denied, the defendant could file a PCRA petition within a year after the appeal, and not be subject to the sort of serial petition bar that would face defendants not afforded unitary review. Since unitary review effectively advances a PCRA attack to the post-verdict stage, to equalize matters, the time spent litigating collateral issues on unitary review must count toward the one year within which a PCRA petition must be filed. Thus, the waiver of PCRA review that is a *sine qua non* of unitary review must make clear to the defendant that any further collateral attack

under the PCRA will be subject to the restrictions in Section 9545(b). Notably, CURA treated PCRA petitions precisely this way. *See supra* note 7.

There are other considerations attending unitary review that a trial court and counsel should be mindful of, and that must be conveyed to the defendant before he would waive PCRA review in order to secure unitary review. First, it is one thing for new counsel on post-verdict review to read a cold record, notice some colorable but defaulted claims, and decide to pursue claims of trial counsel ineffectiveness. But, PCRA review is designed to embrace all cognizable claims deemed worth pursuing, in counsel's judgment. Thus, counsel must be cognizant that the PCRA embraces ineffectiveness claims other than record-based ones, which may require further investigation and research, and the PCRA embraces claims other than ineffectiveness, which likewise may require development. Unitary review should not be pursued where it may compromise the fullness of the defendant's options for collateral attack represented by the PCRA, absent an appropriate waiver.[12] The more involved and complicated the case, no doubt, the less likely it may be a candidate to waive the defendant's PCRA rights in order to secure unitary review on post-verdict motions.

**12.** Notably, even under the *Bomar* exception, this Court cautioned that it would be inappropriate to review claims of counsel ineffectiveness on direct appeal where it appeared that new counsel's review was confined to record-based claims. *See Commonwealth v. May*, 584 Pa. 640, 887 A.2d 750, 758 (2005) ("Moreover, there is no reason to believe that the record-based challenges here exhaust the universe of claims respecting trial counsel's performance, both record-based and non-record-based, which might be pursued in the fuller procedural time-frame made available for PCRA review. Entertaining these claims now would likely involve piecemeal review and would generate the future complication of requiring appellant to "layer" additional claims of ineffectiveness upon PCRA review. Accordingly, to facilitate a more appropriate and complete review of appellant's collateral claims, we dismiss the instant claims of ineffective assistance of trial counsel without prejudice to appellant's right to pursue those claims in a petition filed pursuant to the PCRA."). *See also Commonwealth v. Powell*, 598 Pa. 224, 956 A.2d 406, 428–29 (2008); *Commonwealth v. Pagan*, 597 Pa. 69, 950 A.2d 270, 287–88 (2008).

Second, as with the Court's reposing discretionary authority in trial judges to entertain individual, record-based claims of ineffective assistance of apparent merit, *see* Part III(C)(1), *supra*, our reposing of authority to consider unitary review of comprehensive collateral claims, if accompanied by a PCRA waiver, is an exception which does not displace the general rule represented by *Grant.* A court should agree to such review only upon good cause shown and after a full PCRA waiver colloquy. Furthermore, the trial court is not obliged to appoint new counsel to facilitate requests for unitary review, or to indulge a defendant's complaints about trial counsel. Appointments of counsel generally continue through the appellate stage, and collateral claims focusing on counsel's performance presumptively should await collateral review. And, again, it should be remembered that, in cases where the only viable issues are collateral, and the sentence is of sufficient length that the defendant will likely satisfy the PCRA custody requirement, the defendant always has the option of proceeding immediately to PCRA review, without first pursuing a direct appeal. Ultimately, we trust in the discretion of the trial courts to determine which cases present appropriate circumstances to warrant post-verdict unitary review of prolix claims, contingent upon a waiver of PCRA review.

## IV

Finally, in our consideration of the issues here, we have been mindful of the pendency and ultimate decision in *Martinez v. Ryan,* 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), a federal *habeas corpus* case involving a state prisoner from Arizona. Prior authority from the High Court had made clear that state prisoners do not "have a constitutional right to counsel while mounting collateral attacks upon their convictions." *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *see also Murray v. Giarratano,* 492 U.S. 1, 10, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (plurality). The Court had reasoned that, "[S]tates have no obligation to provide [a post-conviction] avenue of relief ... and when they do, the fundamental fairness mandated by the Due Process

clause does not require that the State supply a lawyer as well." 481 U.S. at 557, 107 S.Ct. 1990. *Finley* had a significant effect on federal *habeas corpus* review of state convictions in instances where the prisoner sought to raise a constitutional claim that he had defaulted in state court. Under settled federal law, claims properly deemed procedurally defaulted in state court are generally unreviewable in federal *habeas* proceedings. One narrow exception, however, is if the prisoner can show "cause and actual prejudice" to excuse the state waiver. *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."). Because there is no federal constitutional right to counsel in a state post-conviction proceeding, the Court in *Coleman* rendered an unqualified holding that an attorney's errors at that stage which caused the default did not establish "cause" to allow federal consideration of the claims thereby waived. *Id.* at 753–55, 111 S.Ct. 2546.

The question accepted for review in *Martinez* essentially asked the Court to revisit *Finley* and *Coleman* and to extend a federal constitutional right to the assistance of counsel on state collateral attack where that state collateral attack represented the first opportunity to challenge trial counsel's performance. The *Martinez* Court noted that the state of Arizona does not permit a convict alleging ineffective assistance of trial counsel to raise such a claim on direct review, but instead requires those claims to be litigated in state collateral proceedings. The petitioner in *Martinez* sought to raise a claim of trial counsel ineffectiveness on federal review, but his lawyer on state collateral attack (representing his only opportunity to challenge trial counsel's performance) had defaulted all trial counsel ineffectiveness claims. The issue accepted for

review by the U.S. Supreme Court in *Martinez* was stated as follows: "Whether a defendant in a state criminal case who is prohibited by state law from raising on direct appeal any claim of ineffective assistance of trial counsel, but who has a state-law right to raise such a claim in a first post-conviction proceeding, has a federal constitutional right to effective assistance of first post-conviction counsel specifically with respect to his ineffective-assistance-of-trial-counsel claim." 566 U.S. at ——, 132 S.Ct. at 1326 (quoting certiorari petition).

The *Martinez* Court majority stated that, notwithstanding the "unqualified" language in *Coleman*, it was an open question of constitutional law whether there was a right to effective counsel in initial-review, state post-trial collateral proceedings if those proceedings represented the first occasion to raise a claim of ineffective assistance at trial. *Id.* at ——, 132 S.Ct. at 1315. Ultimately, the High Court elected to "reframe" the issue in its opinion, and to fashion what the Court variously described as a "narrow exception," "limited qualification" or "modification" to *Coleman*, bottomed on non-constitutional, "equity" grounds. Thus, without holding that there was a constitutional **right** to counsel on state collateral attack—in any circumstance—the Court held that there might be a federal *habeas corpus* **remedy**—in the sense that an otherwise defaulted claim of trial counsel ineffectiveness could receive *de novo* federal merits review and relief could be awarded—in a single circumstance: where the trial counsel ineffectiveness claim was substantial and was defaulted in "initial review" state collateral proceedings and that state initial collateral review represented the first opportunity, under state law, to challenge trial counsel's performance. In that single instance, the ineffectiveness of collateral review counsel could be deemed "cause," under *Coleman*, to excuse a prisoner's procedural default of a trial counsel ineffectiveness claim. "Where under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal *habeas* court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel

or counsel in that proceeding was ineffective." *Id.* at ——, 132 S.Ct. at 1320. Just this past term, the High Court extended the *Martinez* exception to include situations where, although a state does not absolutely bar the prospect of raising ineffectiveness claims on direct appeal, as Arizona did in *Martinez*, "the state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino*, 569 U.S. at ——, 133 S.Ct. at 1921 (construing Texas procedural law).

The *Martinez* Court recognized that there are "sound reasons" for a state to defer consideration of ineffectiveness claims to collateral review: *e.g.,* such claims often depend upon evidence outside the trial record; direct appeal may not be as effective as other proceedings for developing such claims; and there may not be adequate time within governing appellate rules to allow for necessary expansion of the record. *Martinez*, 566 U.S. at ——, 132 S.Ct. at 1318. *Accord Trevino*, 569 U.S. at ——, 133 S.Ct. at 1921 ("practical considerations, such as the need for a new lawyer, the need to expand the trial court record, and the need for sufficient time to develop the claim, argue strongly for initial consideration of the claim during collateral, rather than direct, review."). However, the *Martinez* Court held, there are "consequences" arising from the choice to defer ineffectiveness claims that will affect the State's ability to argue, upon later federal *habeas* review, that the defendant defaulted trial counsel ineffectiveness claims by failing to raise them in state court. "By deliberately choosing to move trial ineffectiveness claims outside of the direct-appeal process, where counsel is constitutionally guaranteed, the State significantly diminishes prisoners' ability to file such claims. It is within the context of this state procedural framework that counsel's ineffectiveness in an initial-review collateral proceeding qualifies as cause for a procedural default." 566 U.S. at ——, 132 S.Ct. at 1318. In explaining its equitable determination, the Court noted that,

by avoiding a constitutional ruling, it afforded flexibility to the States:

A constitutional ruling would provide defendants a free-standing constitutional claim to raise; it would require the appointment of counsel in initial-review collateral proceedings; it would impose the same system of appointing counsel in every State; and it would require a reversal in all state collateral cases on direct review from state courts if the States' system of appointing counsel did not conform to the constitutional rule. An equitable ruling, by contrast, permits States a variety of systems for appointing counsel in initial-review collateral proceedings. And it permits a State to elect between appointing counsel in initial-review collateral proceedings or not asserting a procedural default and raising a defense on the merits in federal *habeas* proceedings. In addition, state collateral cases on direct review from state courts are unaffected by the ruling in this case.

*Id.* at ——, 132 S.Ct. at 1319–20.

*Martinez* is significant in its emphasis on the centrality of claims of ineffective assistance of trial counsel. Indeed, the Court stressed at some length the "bedrock" importance of effective counsel at trial and the derivative importance of opportunities to litigate claims of trial counsel ineffectiveness, which the Court went so far as to characterize as claims of "trial error." *Id.* at ——, 132 S.Ct. at 1317–18. *Accord Trevino*, 569 U.S. at ——, 133 S.Ct. at 1921 ("The right involved—adequate assistance of counsel at trial—is similarly and critically important."). The Court's cause and prejudice holding, in essence, created a federal safety valve to allow for a third level of review—exclusively federal—if the subject claim involved a trial default, and initial collateral review counsel did not recognize it.

The potential complication for this Court is whether this new federal *habeas* regime should affect our thinking concerning the specific claims presented on this appeal, which involve establishing appropriate review paradigms for claims of ineffective assistance of trial counsel. The parties did not brief

*Martinez* nor have there been any post-submission communications concerning the case. As the Court made clear, *Martinez* did not recognize a new constitutional right that the States are obliged to accommodate in any specific fashion. But, the case does establish a new federal *habeas corpus* consequence that jeopardizes both a Pennsylvania procedural default rule and the State's power and right to pass upon constitutional claims in the first instance. In short, this new equitable rule in practice can be just as coercive as the recognition of a new right.

The new rule in *Martinez* fits into the Pennsylvania review paradigm as follows. As a result of the terms of the PCRA, limitations on the power of counsel to accuse himself of ineffectiveness, and a case such as *Grant*, which was powered in part by fidelity to the approach to ineffectiveness claims directed by the PCRA, claims of ineffective assistance of trial counsel in Pennsylvania generally are deferred to PCRA review and generally are not available on direct appeal. As the *Martinez* and *Trevino* Courts recognized, and as this Court developed at length in *Grant*, there are legitimate reasons to defer the claims.

Notably, Pennsylvania is more accommodating of collateral claims than some other states. Thus, by procedural rule, Pennsylvania goes farther than is required by the federal Constitution and affords PCRA petitioners a rule-based right to counsel on initial PCRA petitions. *See* Pa.R.Crim.P. 904. Moreover, claims of ineffective assistance of trial counsel are cognizable under the PCRA, 42 Pa.C.S. § 9543(a)(2)(ii), and such claims routinely form the bulk of the claims raised on initial PCRA review—as they were the focus of the PCRA petition filed in the case *sub judice*. This Court has also held that the right to counsel conferred on initial PCRA review means "an enforceable right" to the effective assistance of counsel. *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 699–700 (1998) (citing *Commonwealth v. Albert*, 522 Pa. 331, 561 A.2d 736, 738 (1989)). This recognition anticipates the *Martinez* Court's focus—albeit our focus was not confined to a

single class of claims, such as the defaulted trial counsel ineffectiveness claims of concern in *Martinez* and *Trevino*.

Nevertheless, there is no formal mechanism in the PCRA for a second round of collateral attack focusing upon the performance of PCRA counsel, much less is there a formal mechanism designed to specifically capture claims of trial counsel ineffectiveness defaulted by initial-review PCRA counsel. . Frankly, this Court has struggled with the question of how to enforce the "enforceable" right to effective PCRA counsel within the strictures of the PCRA, as the statute was amended in 1995. Our recognition of an enforceable right to effective PCRA counsel pre-dated those amendments, which imposed both serial petition restrictions and timing restrictions upon collateral challenges. The question of whether and how to vindicate the right to effective PCRA counsel has been discussed at length in majority opinions and in responsive opinions in cases such as *Commonwealth v. Ligons*, 601 Pa. 103, 971 A.2d 1125 (2009) and *Commonwealth v. Pitts*, 603 Pa. 1, 981 A.2d 875 (2009). But, the Justices have not been of one mind respecting how to resolve the issue, and no definitive resolution has emerged.

*Martinez* would appear to provide a solution of sorts, at least respecting defaulted new claims of trial counsel ineffectiveness. As matters currently exist, it would appear that if the federal courts deem Pennsylvania to be the equivalent of Arizona or Texas in its treatment of claims of trial counsel ineffectiveness on direct appeal, federal courts sitting in *habeas corpus* review of final Pennsylvania convictions may elect not to respect our "one full counseled appeal, one full counseled PCRA review" paradigm, at least as to claims of trial counsel ineffectiveness not raised by PCRA counsel, and may review such new claims on the merits, in the first instance, as an "equitable" matter. Recognizing this prospect, however, we do not believe that the High Court's decision in Martinez requires, or counsels, a different result than what we have determined here.

The existing Pennsylvania review paradigm for ineffectiveness claims, which has been the focus of this appeal, predates

and does not purport to account for the new rule in *Martinez.* The question here is not whether Pennsylvania should, or must, provide a second round of collateral review as of right to capture claims of PCRA counsel ineffectiveness for defaulting claims of trial counsel ineffectiveness—and if it should or must, whether that recalibration is a matter for the General Assembly or the Court. As the High Court noted, a state could determine to allow claims of ineffective assistance of initial-review counsel to be litigated in federal court in the first instance, under the rubric of cause for procedural default. In that environment, "When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-counsel claim is insubstantial, *i.e.,* it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards." *Martinez,* 566 U.S. at ——, 132 S.Ct. at 1319. The question of whether to take measures to otherwise account for the concerns of *Martinez* is one of policy, and it should await either the action of the General Assembly—in response to *Martinez* and cases such as *Ligons* and Pitts—or a case where the issue is properly joined.

Instead, the distinct, procedural question on this appeal concerns the proper roles for direct appeal and the PCRA respecting claims of trial counsel ineffectiveness. The question implicates the terms of the PCRA, the difficulties in litigating ineffectiveness claims on direct review, and the issue of equal treatment which we have discussed earlier in this Opinion. The reasons favoring deferral of ineffectiveness claims already have been addressed at length in *Grant* and nothing in *Martinez* or *Trevino* operates to alter that calculus. We recognize that the High Court has so far framed its concern in terms of state review paradigms where trial counsel ineffectiveness claims categorically (*Martinez* ) or "systemically" (*Trevino* ) cannot be raised on direct appeal. But, the area obviously is dynamic; for example, it is not difficult to imagine the Court expanding its approach to individual cases, *i.e.,* holding that the *Martinez* remedy may be made available

if the defendant in fact did not have an opportunity, in his own case, to raise ineffectiveness claims on direct appeal. This Court's motivation in cases such as *Grant* and the one *sub judice* has not been to address or blunt such concerns; our focus has been on fashioning a procedure that comports with the terms and role of the PCRA, the hindrances to reviewing ineffectiveness claims on direct appeal, and recognition of an exception that affords a measure of equalization of authorized opportunities for review.

## V

The order of the Superior Court is vacated and the case is remanded to the trial court for proceedings consistent with this Opinion.

Justice SAYLOR, BAER and STEVENS join the opinion.

Justice SAYLOR files a concurring opinion.

Justice EAKIN files a concurring opinion in which Justice McCAFFERY joins.

Justice BAER files a concurring opinion.

Justice TODD files a concurring opinion in which Justice McCAFFERY joins.

Justice SAYLOR, concurring.

I join the majority opinion, but I believe the prescribed framework for review should be further refined to provide specific accommodations pertaining to short-sentence scenarios. As reflected in my dissenting opinion in *Commonwealth v. O'Berg*, 584 Pa. 11, 26–29, 880 A.2d 597, 606–08 (2005) (Saylor, J., dissenting), the courts cannot reasonably "defer" constitutional claims to PCRA proceedings which they know will not be available. Where it is clear that there will be no PCRA review, I do not see that there is any other rational choice but to consider all constitutional claims on direct appellate review (or via some other guaranteed-review procedure). *See generally Sibron v. New York*, 392 U.S. 40, 52–53, 88 S.Ct.

1889, 1897, 20 L.Ed.2d 917 (1968) ("Many . . . abiding constitutional problems are encountered . . . in the context of prosecutions for minor offenses which carry only short sentences. We do not believe that the Constitution contemplates that people deprived of constitutional rights at this level be left . . . remediless. . . ."), *quoted in* Thomas M. Place, *Ineffectiveness of Counsel and Short–Term Sentences in Pennsylvania: A Claim in Search of a Remedy,* 17 TEMP. POL. & CIV. RTS. L.REV. 109,109 (2007).[1]

To the extent there is doubt concerning whether a sentence is sufficiently lengthy to implicate post-conviction review (as there will be across a wide category of cases), "deferral" may be appropriate, but if the courts are incorrect in their assumption that the post-conviction forum will be available, there should be an avenue available to accomplish the essential review of the "deferred" claims. In this regard, it seems to me, the choice is: (1) to channel such claims through the PCRA despite the conflict with its express limitations, similar to the approach of *Commonwealth v. Lantzy,* 558 Pa. 214, 736 A.2d 564 (1999); or (2) to invoke or devise a common-law review procedure. It is untenable, in my view, to contemplate that "deferred" claims should evaporate merely because the courts have guessed, wrongly, that there would be a forum available for their later review.

1. I recognize that the scheme of review reflected in the majority opinion mitigates the harshness of deferral in the short-sentence scenario (and otherwise) by offering the option to waive post-conviction review. It is problematic, however, to require a waiver as a prerequisite to the conferral of something to which the defendant already is entitled (*i.e.,* appellate review of his constitutional claims). Moreover, the matter is further complicated by the good-cause overlay. Obviously, in my view, absent some other guaranteed-review procedure, there is always good cause for non-deferral where a sentence is not sufficiently long to implicate PCRA proceedings.

Parenthetically, this Court is otherwise considering the constitutionality of the PCRA's requirement that a petitioner be "currently serving a sentence of imprisonment, probation or parole for the crime" at the time relief is granted, 42 Pa.C.S. § 9543(a)(1)(i), and the arguments in that case discuss the feasibility of utilizing the *Bomar* exception in the short sentence context to alleviate the constitutional dilemma. *See Commonwealth v. Turner,* 19 Pa. D. & C. 5th 129 (C.P.Phila.2010).

Finally, I recognize that the endeavor undertaken in the majority opinion is in the nature of rulemaking, and that the adjudicatory setting rarely offers the most favorable conditions for such exercises. Nevertheless, given the need for prompt clarification concerning *Bomar's* appropriate scope and the presence of several institutional constraints, I agree with and support the approach reflected in the majority opinion, subject only to the potential for ongoing refinements via the rulemaking avenue. While the approach delineated in the opinion authored by the Chief Justice does entail some line drawing, it is clear to me that this was undertaken with an eye toward reasonable fairness and the orderly administration of justice.

Justice EAKIN, concurring.

I agree with the majority's holding: trial courts have the discretion to entertain ineffectiveness claims in post-trial proceedings that are resolvable and meritorious from the apparent record; likewise, they may hear non-record-based ineffectiveness claims if there is good cause to do so. I do not agree, however, that consideration under the latter "good cause" exception must include waiver of all future collateral review. Rather, I would hold this to be issue-specific; consideration of discrete issues raised on direct review precludes collateral review of those issues only. Once raised and addressed, such issues can no longer serve as the basis for collateral relief, whether they deal with trial counsel's services or appellate counsel's performance in litigating the issue.

I emphasize that this position would simply allow trial courts discretion to review discrete, determinable ineffectiveness claims on post-verdict motions in cases where such review promotes efficiency and judicial economy; it is not an endorsement of this practice as the preferred method of disposition of ineffectiveness claims, particularly prolix claims which are generally best left until collateral review, as noted in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002).

Justice McCAFFERY joins this concurring opinion.

Justice BAER, concurring.

I join the majority opinion in full. Initially, I commend the majority for reevaluating the jurisprudence arising from the purportedly unintended expansion of this Court's decision in *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003), and for creating a limited procedure for litigating claims challenging counsel's stewardship on post-verdict motions and direct appeal. The majority's thoughtful analysis has caused me to reconsider my personal position on the matter. As explained *infra*, to obtain consensus and provide clear guidance to the bench and bar, I now join the majority's sentiments that our holding in *Bomar*, which permitted certain claims of ineffective assistance of counsel to be raised on direct appeal, should be limited to cases litigated in the trial court before this Court decided the seminal case of *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002). As described below, I reach this compromise of position as I believe that my prior concerns about limiting the *Bomar* exception are accommodated by the majority's new approach.

Under the majority's holding, trial courts will not have unfettered discretion to entertain claims of ineffective assistance of counsel on direct appeal, but may do so only if: (1) there are extraordinary circumstances where a claim of ineffective assistance of trial counsel is apparent from the record and meritorious to the extent that immediate consideration of the claim best serves the interests of justice; or (2) the defendant demonstrates good cause to raise multiple or prolix ineffectiveness claims on direct appeal, including non-record based claims, and expressly and knowingly waives his right to seek subsequent PCRA review ("good cause/PCRA waiver exception").

I support adoption of the "extraordinary circumstances" exception as it allows for immediate vindication of a clearly meritorious record-based claim of ineffective assistance of counsel. I also support adoption of the good cause/PCRA waiver exception because, in my view, it affords a defendant serving a "short sentence" as discussed in *Commonwealth v. O'Berg*, 584 Pa. 11, 880 A.2d 597 (2005), a viable opportunity to

obtain collateral review prior to expiration of his sentence. However, as set forth *infra*, I would caution defendants to employ the good cause/PCRA waiver exception only in *O'Berg*-type cases where they would otherwise lose PCRA review entirely if not invoked imminently. Presentation of routine ineffectiveness claims on direct appeal in exchange for waiver of subsequent PCRA review would be unwise and highly prejudicial because the defendant would be forfeiting the extended time period allotted under the PCRA to investigate non-record-based ineffectiveness claims.

## I. Limiting of the *Bomar* Exception

As recognized by the majority, this Court in *Grant* did not adopt a blanket rule prohibiting the presentation of ineffectiveness claims in post-trial motions or on direct appeal, but rather held that, "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." 813 A.2d at 738. In support of our general rule favoring deferral of ineffectiveness claims to PCRA proceedings, we recognized that the obligations of appellate counsel may not, as a constitutional matter, include raising claims that are outside the record certified for appeal, and, assuming counsel had such obligation, the 30–day period for filing a direct appeal served as an obstacle to counsel's ability to investigate and develop extra-record claims of ineffectiveness. *Id.* at 737. We further noted that a record may not be developed sufficiently on direct appeal to permit adequate review of ineffectiveness claims, particularly the determination of the reasonableness of trial counsel's strategy or tactic. *Id.* Additionally, we emphasized that allowing unitary review of ineffectiveness claims was contrary to fundamental principles of appellate review, which require issue preservation in the trial court accompanied by a trial court opinion addressing the ineffectiveness claims. *Id.*

Five months after our opinion in *Grant* was filed, this Court decided *Bomar*, which involved a direct appeal of a capital sentence. Consistent with controlling precedent at the time, the defendant, represented by new counsel, filed post-sentence

motions challenging trial counsel's ineffectiveness, which were litigated in the trial court prior to our pronouncement in *Grant*. The trial court conducted evidentiary hearings on such claims, and disposed of the ineffectiveness claims in its opinion. When presented with the same ineffectiveness claims on direct appeal, this Court did not defer them as suggested in *Grant*, but entertained them on the merits. We held that because: (1) the defendant had presented his ineffectiveness claims to the trial court; (2) the trial court had afforded the defendant an evidentiary hearing to develop such claims; and (3) the trial court disposed of such claims in its opinion, the concerns that led us to adopt *Grant's* general rule deferring consideration of ineffectiveness claims to collateral review were not present. *Bomar*, 826 A.2d at 853.[1] This Court went on to hold that "this circumstance is an exception to the general rule of deferral in *Grant*." *Id.* at 855.

While the Court may have intended for the "*Bomar* exception" to apply only to cases litigated in the trial court prior to our announcement in *Grant*, as that was the factual predicate of *Bomar*, the opinion did not express such intent in its analysis of the issue.[2] Further, decisions of this Court filed after *Bomar* did not cite the pre-*Grant* trial litigation posture of the case as a prerequisite for application of the exception. Rather, we described the *Bomar* exception as applying where ineffectiveness claims had been preserved in the trial court on direct appeal, were the subject of an evidentiary hearing, and had been disposed of in the trial court's opinion. *See e.g. Commonwealth v. Mitchell*, 576 Pa. 258, 839 A.2d 202, 208 (2003) (describing the *Bomar* exception as permitting consideration of "only those ineffectiveness claims where the lower court conducted a hearing and provided a full consideration of the issue"); *Commonwealth v. Malloy*, 579 Pa. 425, 856 A.2d

---

1. The Court further noted that the difficulties facing appellate counsel in developing ineffectiveness claims within the limited time allotted for filing a direct appeal were not implicated as the defendant, at least to the claims presented, raised and developed fully such claims at the evidentiary hearings conducted by the trial court. *Id.* at 855.

2. This author was not a member of the Court when Bomar was decided.

767, 780–81 (2004) (describing *Bomar* as holding that "where the concerns highlighted in *Grant* did not exist—i.e., the claims of ineffective assistance of counsel were raised and fully developed at a hearing in the trial court at which counsel testified and the trial court addressed the claims in an opinion—this Court would proceed to address the ineffectiveness claims on direct appeal"); *Commonwealth v. Singley*, 582 Pa. 5, 868 A.2d 403, 411 n. 8 (2005) (interpreting *Bomar* as holding that "direct appellate review of ineffective assistance of counsel is permitted where the issues were raised in the trial court, a hearing was held at which trial counsel testified, and the trial court passed on those claims").

Moreover, this Court continued to apply the *Bomar* exception in a capital appeal where the defendant's post-sentence motions alleging the ineffective assistance of trial counsel had been litigated in the trial court after *Grant* had been decided. *Commonwealth v. Chmiel*, 585 Pa. 547, 889 A.2d 501, 540 (2005). We reiterated that the *Bomar* exception applied because the trial court held an evidentiary hearing on the claims, and disposed of the ineffectiveness claims in its opinion. *Id.*[3] *See also Commonwealth v. Rega*, 593 Pa. 659, 933 A.2d 997, 1018 (2007) (wherein a plurality of the Court agreed that the *Bomar* exception may apply where ineffectiveness claims were litigated on direct appeal after *Grant* had been decided).

This author has favored application of the *Bomar* exception in post-*Grant* cases for several reasons. First, the reasoning of *Bomar*—that *Grant's* primary concerns over impediments to developing and reviewing ineffectiveness claims on direct appeal are eliminated where the defendant preserved the ineffectiveness claims in the trial court, they were the subject of an evidentiary hearing, and were disposed of by the trial court in its opinion—is equally persuasive in both the pre-*Grant* and post-*Grant* scenario. Second, entertaining ineffectiveness claims that had already been subject to an evidentiary

3. Our decision in *Chmiel* was written by this author. No responsive opinions were filed objecting to the consideration of ineffective claims under the *Bomar* exception.

hearing and reasoned disposition by the trial court appeared, at first blush, to save judicial resources and give finality to a defendant's judgment of sentence. Third, and most significantly, a broad application of the *Bomar* exception afforded trial courts discretion to consider a claim of ineffectiveness on direct appeal, which allowed for immediate vindication of a clearly meritorious claim without having the defendant await disposition of his direct appeal to assert a claim of ineffectiveness under the PCRA. Otherwise, a defendant with a claim of trial counsel ineffectiveness that was of obvious record-based merit would have to forego his direct appeal and proceed directly to PCRA review or wait an indeterminate amount of time until his direct appeal was decided before he could seek relief in a PCRA petition. Finding such "Hobson's choice" undesirable and absent any existing alternative to afford trial courts discretion to entertain only those ineffectiveness claims that warranted immediate review, this author supported a broad interpretation of the *Bomar* exception.

Admittedly, and as noted cogently by the majority, a broad application of the *Bomar* exception raised complications of its own. Application of the *Bomar* exception became arbitrary as there were no existing standards to channel the trial court's exercise of discretion as to when to entertain the ineffectiveness claims on direct appeal. *See Rega,* 933 A.2d at 1032 (2007) (Castille, J., concurring) (recognizing that questions of arbitrariness arose because there were "no existing standards or guidelines governing when a trial judge should permit litigation of ineffectiveness claims, or other collateral claims, on post-verdict review or should defer to review at the collateral stage"). Concerns also arose because defendants who challenged trial counsel's performance on direct appeal could potentially receive a second round of collateral review by subsequently filing a PCRA petition after the direct appeal had been resolved. *Id.,* at 1030 (Castille, J., concurring) (opining that "a defendant afforded such hybrid direct review faces no existing impediment in the PCRA, the Criminal Rules, or the case law to pursuing a second round of collateral

claims under the PCRA, after a first round of direct/unitary review concludes").

Thus, I recognize that the difficulties arising from a broad application of the *Bomar* exception have become too problematic to ignore. In an effort to obtain consensus and provide guidance to the bench and bar, I now agree that the *Bomar* exception should be limited to its facts, where the claims of ineffectiveness were litigated in the trial court before this Court announced the general rule of deferral in *Grant*. My concern over trial courts lacking discretion to entertain the exceptional claim of ineffectiveness that would warrant the grant of immediate relief has been allayed by the majority's insightful adoption of the "extraordinary circumstances" exception. For the first time, trial courts will possess the requisite guidance to channel their discretion to entertain a claim of ineffectiveness on direct appeal that is apparent on the record and meritorious to the extent that immediate consideration of the claim best serves the interests of justice. While there may be litigation over what circumstance constitutes an extraordinary one, I am confident that the majority has narrowly crafted the exception, and that further elucidation will arise through the exercise of trial court discretion, as well as subsequent case law addressing specific claims of ineffectiveness in the appropriate cases. I further acknowledge that judicial resources will not be wasted by appellate courts deferring consideration of ineffectiveness claims that have already been adjudicated by the trial court because such procedure will ultimately eliminate circumstances where defendants obtain two rounds of collateral review. It is for these reasons that I depart from the position I have taken in prior cases, and now join the majority's mandate to limit the *Bomar* exception.

## II. The Good Cause/PCRA Waiver Exception

The majority's adoption of the second exception to *Grant's* general rule of deferral applies where the defendant demonstrates good cause for unitary review of multiple or prolix ineffectiveness claims on direct appeal, and the defendant

executes a knowing and express waiver of his entitlement to seek subsequent PCRA review from his conviction and sentence. Under the PCRA, a petitioner is only eligible for postconviction relief if he is "currently serving a sentence of imprisonment, probation or parole for the crime." 42 Pa.C.S. § 9543(a)(1)(i). Accordingly, when defendants are precluded from litigating ineffective assistance of counsel claims on direct appeal, those defendants who have completed their sentences before their direct appeals have been decided have no opportunity for collateral review.

Our Court confronted this issue directly in *Commonwealth v. O'Berg*, 584 Pa. 11, 880 A.2d 597 (2005), and the majority declined to adopt a "short sentence" exception to the *Grant* general rule of deferral. This author joined the dissenting opinion of Justice Saylor in *O'Berg*, which advocated recognition of an exception to *Grant's* general rule of deferral in circumstances involving sentences of short duration to ensure that defendants would have the opportunity to seek collateral review of their convictions. *See O'Berg*, 880 A.2d at 607–08 (Saylor, J., dissenting, joined by Baer, J.) (opining that "the majority's position that *Grant's* rationale justifies a policy of no review in the short sentence scenario rings hollow, since in crafting its rule of 'deferral,' the *Grant* Court expressly grounded its rationale on the availability of collateral review").

The majority's adoption of the good cause/PCRA waiver exception in the instant case offers that which the majority in *O'Berg* declined to provide—a workable alternative method by which a defendant serving a short sentence could obtain collateral review.[4] At the same time, the majority's approach protects against the defendant obtaining a second round of collateral proceedings by requiring a mandatory waiver of subsequent PCRA review.[5]

---

4.  The majority acknowledges that one of the most important benefits of unitary review is that it "offers defendants who receive shorter prison sentences or probationary sentences the prospect of litigating their constitutional claims sounding in trial counsel ineffectiveness; for many of these defendants, post-appeal PCRA review may prove unavailable." Op. at 622, 79 A.3d at 578.

5.  As the majority in *O'Berg* recognized, because the time for disposition of a particular appeal is indeterminable, a defendant is never certain

While I join the majority's adoption of the good cause/ PCRA waiver exception, in my view, defendants should be wary of invoking it absent circumstances where they will likely lose eligibility for PCRA review if not promptly invoked, as occurs in the short sentence scenario. We recognized in *Grant* that "[d]eferring review of trial counsel ineffectiveness claims until the collateral review stage of the proceedings offers a petitioner the best avenue to effect his Sixth Amendment right to counsel." *Id.* at 738. This sentiment, in part, was based on the fact that investigation and development of a claim of ineffectiveness, in the general sense, takes longer than the time necessary to present a claim on direct appeal. We explained that an appellate counsel who presents ineffectiveness claims on direct appeal "must not only scour the existing record for any issues, but also has the additional burden of raising any extra-record claims that may exist by interviewing the client, family members, and any other people who may shed light on claims that could have been pursued before or during trial and at sentencing." 813 A.2d at 737. Notably, we acknowledged that when ineffectiveness claims are raised on direct appeal, appellate counsel must perform this "Herculean task" in the thirty-day period for filing an appeal from the judgment of sentence, Pa.R.Crim.P. 720, rather than the one-year period from the date the judgment of sentence becomes final in which the defendant may file a PCRA petition. 42 Pa.C.S. § 9545(b). While the mandatory nature of the PCRA waiver resolves the problem of a defendant obtaining a second round of collateral review, it does not dissipate these remaining concerns articulated in *Grant* relating to the distinct and essential roles served by separate direct appeal and collateral criminal proceedings.

whether he will still be serving his sentence at the time his appeal is adjudicated, and, thus, whether he will be eligible to obtain collateral review. 880 A.2d at 602. Accordingly, where the defendant proceeds to avail himself of the good cause/PCRA waiver exception in the short sentence scenario, he does so at his own peril because if he continues to serve his sentence after his judgment of sentence has become final, and thereby remains eligible to seek PCRA review, his mandatory waiver of PCRA review precludes him from obtaining a second bite of the proverbial apple.

Thus, absent the short sentence scenario or other circumstances where the defendant would likely obtain no collateral review at all if not invoked imminently, I find it unwise for defendants to waive subsequent PCRA review, and the concomitant extended period of time it provides to investigate and develop off-record claims, in exchange for immediate resolution of multiple or prolix claims of ineffective assistance of counsel on direct appeal.[6] It was primarily for this reason and due to the absence of clear precedent of this Court requiring waiver of subsequent PCRA proceedings in exchange for unitary review of ineffectiveness claims that I previously resisted such approach. *See Commonwealth v. Wright*, 599 Pa. 270, 961 A.2d 119, 159 (2008) (Baer, J., concurring) (opining that this Court has never held that invocation of the *Bomar* exception results in waiver of subsequent full PCRA review); *Commonwealth v. Liston*, 602 Pa. 10, 977 A.2d 1089, 1101–02 (2009) (Baer, J., concurring) (opining that the *Bomar* decision has never required a forfeiture of subsequent PCRA review in exchange for litigating a claim of ineffectiveness on direct appeal).

With this Court's ruling herein, however, defendants will be on notice that in order to raise multiple or prolix claims of ineffectiveness on direct appeal, they must expressly and knowingly waive all subsequent PCRA review. Armed with this knowledge, defendants and their counsel can evaluate the nature of the ineffectiveness claims sought to be presented for consideration on direct appeal, and can proceed with caution in determining the appropriate case, if any, in which to employ such tactic to their advantage.[7]

**6.** The majority acknowledges the potential hazards of waiving PCRA review in exchange for immediate consideration of ineffectiveness claims on appeal. See Op. at 625, 79 A.3d at 580 (footnote omitted) (providing that "[u]nitary review should not be pursued where it may compromise the fullness of the defendant's options for collateral attack represented by the PCRA, absent an appropriate waiver. The more involved and complicated the case, no doubt, the less likely it may be a candidate to waive the defendant's PCRA rights in order to secure unitary review on post-verdict motions.").

**7.** Finally, I agree with the majority that this Court should save for another day the question of whether and how to vindicate the right to

Justice TODD, concurring.

I join the Majority Opinion with the exception of the waiver paradigm set forth in Part III(C)(2). While I otherwise join the good cause exception the Court adopts therein, I would limit the waiver of PCRA rights required when a defendant seeks unitary review of ineffectiveness claims under the good cause exception to only related derivative claims: those derivative ineffectiveness claims for which the issue raised on direct appeal is a merits component in our three-part ineffectiveness test.[1] *See Commonwealth v. Spotz*, 610 Pa. 17, 44–45, 18 A.3d 244, 260 (2011) (to prove a claim of counsel's ineffectiveness, a petitioner must prove (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused him prejudice). In other words, I would make the waiver issue specific. For example, should the defendant invoke the good cause exception to raise a claim of trial counsel's ineffectiveness for failing to lodge an evidentiary objection, I would require the defendant to waive the right under the PCRA to raise any layered ineffectiveness claim for which trial counsel's failure to object is part of the arguable merits assessment. Thus, having invoked the good cause exception, such a defendant could not then raise a PCRA claim alleging direct appeal counsel's ineffectiveness, for example, for inadequately briefing the claim of trial counsel's ineffectiveness. In this manner, a defendant would be able to challenge trial counsel's performance only once—either on direct appeal where there is good cause to raise a given issue, or, as in the usual case per *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), under the PCRA.[2, 3]

effective PCRA counsel. My personal views on this issue have been set forth in *Commonwealth v. Ligons*, 601 Pa. 103, 971 A.2d 1125 (2009), and *Commonwealth v. Pitts*, 603 Pa. 1, 981 A.2d 875 (2009), and need not be reiterated in the context of this appeal.

1. The principal ineffective claims raised on direct appeal would be barred under the PCRA as they would be previously litigated. *See* 42 Pa.C.S.A. § 9543(a)(3).

2. As a corollary, I would not begin the one-year PCRA time clock upon invocation of the good cause exception. *See* Majority Opinion at 624,

By contrast, as the price for invoking the good cause exception, the majority requires the waiver of **all** PCRA claims (except for those brought under 42 Pa.C.S.A. § 9545(b)). While I share the concern expressed by the majority over prolix litigation, the majority's proffered waiver requirement is not tailored, in my view, to advance that concern. A limited waiver requirement—waiving only related derivative ineffectiveness claims, i.e., layered claims, that focus on the same underlying claim of trial counsel error—would similarly narrow the issues that may be raised in a subsequent PCRA petition, avoiding the majority's proper concern about "two rounds" of PCRA review. *See* Majority Opinion at 622, 79 A.3d at 578.

Moreover, and critically, a limited waiver requirement avoids burdening counsel to assess, in the limited time allowed for a direct appeal, the universe of possible meritorious ineffectiveness claims, including non-record-based claims. It was this very concern that informed our decision in *Grant* in the first place. *See Grant,* 572 Pa. at 66, 813 A.2d at 737 ("Importantly, appellate counsel must perform this Herculean task [of reviewing the case for ineffectiveness claims] in the limited amount of time that is available for filing an appeal from the judgment of sentence—30 days."); *see also* Concurring Opinion (Baer, J.) at 644–45, 79 A.3d at 591–92.

Indeed, in my view, by extracting a comprehensive waiver of PCRA rights as the price for invocation of the good cause exception, under the pressurized circumstances *Grant* ac-

79 A.3d at 579 ("Since unitary review effectively advances a PCRA attack to the post-verdict stage, to equalize matters, the time spent litigating collateral issues on unitary review must count toward the one year period within which a PCRA petition must be filed.").

3. This approach is entirely consistent with *Commonwealth v. Collins,* 585 Pa. 45, 888 A.2d 564 (2005). Under *Collins,* trial court error, trial counsel's ineffectiveness (for ineffectively litigating the trial court error), and appellate counsel's ineffectiveness (for ineffectively litigating trial counsel's ineffectiveness) are each distinct "issues" under the PCRA, and, thus, where the underlying claim is raised on direct appeal, typically the derivative claim may still be raised under the PCRA—that is, the derivative claim is not barred as previously litigated. However, under either a limited waiver approach, or the majority's comprehensive waiver approach, some otherwise meritorious layered claims will be waived, as the cost for accelerated consideration.

knowledges, the majority has rendered the good cause exception, as a practical matter, illusory. Outside of the short sentence scenario, which Justices Saylor and Baer address in their respective concurrences, and for which the driving assumption is that PCRA relief will not be available (and, thus, there is nothing to lose by waiving it), it is difficult to imagine situations in which competent counsel would suggest invoking the good cause exception upon pain of waiver of yet-unknown ineffectiveness claims.[4] *Cf.* Majority Opinion at 625, 79 A.3d at 580 ("Unitary review should not be pursued where it may compromise the fullness of the defendant's options for collateral attack represented by the PCRA, absent an appropriate waiver. The more involved and complicated the case, no doubt, the less likely it may be a candidate to waive [PCRA rights]." (footnote omitted)). Further, I question whether a defendant's waiver could be truly "knowing" under such circumstances. Thus, because of its overbroad waiver requirement, it appears the majority has constructed an exception that no responsible counsel—again, outside of the short sentence scenario—could credibly invoke. *Cf.* Concurring Opinion (Baer, J.) at 644, 79 A.3d at 591 (finding it "unwise" for a defendant to invoke the majority's good cause exception outside of the short sentence scenario).

The majority offers two principal justifications for its comprehensive waiver approach, neither of which I find to be compelling rationales for its chosen course. First, the majority notes that "Court majorities have stated that this sort of unitary review, if permitted at all, should only proceed where accompanied by a knowing, voluntary, and express waiver of PCRA review." Majority Opinion at 622, 79 A.3d at 578.

4. Of course, our pre-*Grant* caselaw required direct appeal counsel to do just that: to raise, or be found to have waived, all meritorious trial counsel ineffectiveness claims. However, before *Grant*, where direct appeal counsel, perhaps unsurprisingly, imperfectly identified meritorious ineffectiveness claims, the PCRA stood as an avenue for relief for such overlooked claims, couched as layered claims. Under the majority's waiver approach, there is no such avenue for relief. In that sense, the majority's waiver approach is more onerous that the *Hubbard*-era requirement that counsel raise ineffectiveness claims at the first opportunity—which usually meant on direct appeal—a state of affairs we emphatically rejected in *Grant. See Grant* (discussing and overruling *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977)).

However, as conceded by the majority, "the cases generating those expressions did not enforce such a holding, and review was granted in this case specifically to determine the issue." *Id.* at 619, 79 A.3d at 576. Thus, we have substantial flexibility in reevaluating *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003), and crafting a workable framework; in my view, a limited waiver approach fits comfortably within that latitude.

Second, the majority states that its waiver approach is necessary to "ensure that the unitary review described here does not offer a benefit (beyond acceleration) not available to defendants who do not receive such review." Majority Opinion at 624, 79 A.3d at 579. Yet, as all defendants are entitled to rely on the good cause exception—should they meet it—it is unclear what improper asymmetrical "benefit" the majority would preclude with its waiver requirement. By imposing a standard for invoking the exception, a standard we will no doubt refine in subsequent cases and ensure is applied uniformly, we treat all defendants equally. If by "benefit" the majority means we should not grant certain defendants **additional** rounds of review, I completely agree. A limited waiver achieves that, again, by requiring waiver of discrete derivative ineffectiveness claims.

I join the majority's reevaluation of *Bomar*, in part, because I agree that the *Bomar* exception vested unbridled discretion in our trial courts over whether to allow ineffectiveness claims to be litigated on direct appeal, and I join the majority's good cause construct because it provides that missing guidance. Further, I agree that a concomitant waiver of PCRA review of discrete derivative claims should be required to avoid multiple rounds of review of the same underlying question. I simply disagree, for the above reasons, that to accomplish this it is necessary or reasonable to require a defendant to do more than waive related derivative claims, much less **all** PCRA claims, as the majority requires. Rather, limiting the waiver of PCRA rights to related derivative claims when a defendant invokes the good cause exception accounts for legitimate concerns about permitting multiple rounds of collateral review

while simultaneously diminishing the pitfalls of invoking the exception. It is, in my view, the better course.

Justice McCAFFERY joins this concurring opinion.